Dear Mr. Bubrig:
This office is in receipt of your opinion request wherein you asked:
 1) Does it constitute a criminal offense for the Sheriff of Plaquemines Parish to charge $10.00 (ten) for a photo I.D. to enter the devastated area of South Plaquemines Parish?
 2) What legal authority, if any, authorizes the Sheriff of Plaquemines Parish to charge $10.00 (ten) for a photo I.D. to enter the devastated area of South Plaquemines Parish?
In response to your inquiry it is necessary to first look at the police powers of the state. In New Orleans Campaign for aLiving Wage v. City of Orleans, 02-0991 (La. 9/4/02),825 So.2d 1098, Justice Kimball defined police powers as:
 `[T]he state's inherent power to govern persons and things, within constitutional limits, for promotion of general health, safety, welfare, and morals . . .' [I]t requires only that the measure be `one in which the action taken is, under all the circumstances, reasonably necessary and designed to accomplish a purpose properly falling within the scope of the police power.' If a police power measure is reasonable, it must still satisfy two other requirements. First, the operation of the measure must tend `in some degree to prevent an offense or evil or otherwise to preserve public health, safety, welfare, or morals.' Second, `the state's exercise of its police power must not interfere with constitutional rights to an extent that is entirely out of proportion to any benefit redounding to the public.'
Murchison, Kenneth M., Local Government Law, 64 La. L. Rev. 275, 288 (2004).
As agents of the state, sheriffs have powers that are explicitly authorized, such as those mentioned in La. Const. Art.5, § 27, those that are clearly implied, and those reasonably necessary to fulfill said powers. The latter are usually procedural in nature. Specifically, there is no law explicitly authorizing the sheriff to charge $10.00 for a photo *Page 2 
ID to enter a disaster area. However, the inverse is also true. There is also no law explicitly prohibiting the sheriff to charge $10.00 for a photo ID to enter a disaster area.
Nevertheless, as both a public officer and as a peace officer there may be an implied duty to "prevent an offense or evil or otherwise to preserve public health, safety, welfare, or morals" as long as the sheriff does not "interfere with constitutional rights to an extent that is entirely out of proportion to any benefit redounding to the public". See New Orleans Campaign fora Living Wage, supra.
Thus, if the sheriff is given the task to preserve the health, safety, and welfare of the public, then the law likely allows the sheriff to create a procedure for ensuring the safety of the people in the disaster area. Creating a procedure requiring photo identification, at cost to the public, to enter the devastated area would probably aid in accomplishing said goals. Moreover, considering the sheriff intends to use the entire fee to promote the above mentioned goals in furtherance of the public's interest, there appears to be a clear nexus between the health, safety, and welfare of the citizens, the procedure to enter the devastated area and its costs, a ten dollar fee for photo identification.
Accordingly, there is no statute criminalizing such action taken by a sheriff pursuant to his implied powers. Nonetheless, a sheriff may be charged with malfeasance in office if he "intentionally refuse[s] or fail[s] to perform any duty lawfully required of him . . . [or] intentionally perform[s] any such duty in an unlawful manner." La. R.S. 14:134.
In conclusion, it is the considered opinion of this office that there is nothing in the law authorizing the sheriff to charge $10.00 for a photo ID to enter a disaster area or explicitly prohibiting the sheriff to charge $10.00 for a photo ID to enter a disaster area. Nevertheless, under our structure of government, it is also the opinion of this office that in disaster situations the sheriff's power, as both a public official and a peace officer, to do such can likely be implied from his powers and duties as an agent of the state. Namely it is the duty to preserve the public health, safety and welfare that prevails, as long as there is a clear nexus between the procedures created and the protection of the people, which is evident in this situation.
It is our continuing desire to lend aid to the public servants of the state such as yourself, Mr. Bubrig, and we pray that the foregoing Opinion has been responsive to your question, of value, and helpful.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: __________________
 D. MARK VALENTINE
 ASSISTANT ATTORNEY GENERAL